### BERNICE BROWNING v. NORTH CAROLINA STATE HIGHWAY COMMISSION.

(Filed 16 December 1964.)

**1. Tenants in Common § 5;   Highways § 5—**

The conveyance of a right of way easement by one tenant in common does not affect the title of the other tenant in common.

**2. Eminent Domain §§ 1, 7a;   Constitutional Law § 24—**

A property owner has a constitutional right to just compensation for the taking of his property for a public purpose, and every property owner

is entitled to reasonable notice and opportunity to be heard on the question of damages for the taking.

**3. Eminent Domain § 7a— Easement incident to widening of highway held not acquired by mere posting of map.**

The evidence tended to show that at the time a highway was widened from 18 feet to 22 feet the Highway Commission plans and specifications called for a 100 foot right of way, and that a map was posted at the courthouse showing a 100 foot right of way. There was no evidence that the plans and specifications were available to the plaintiff or the public generally, or that the extent of the highway was ever marked on the ground in the immediate vicinity of plaintiff's property, or that the Commission exercised any dominion over the land outside of the original 60 foot right of way until shortly before the institution of this action when the Commission's agents went upon plaintiffs land and felled trees and put out stakes. *Held:* Plaintiff was given no reasonable notice of the taking of her property until the Commission first exercised actual *dominion over the* enlarged right of way, the mere filing of the map incident to widening an existing right of way being insufficient to give plaintiff notice and an opportunity to be heard, and therefore plaintiff's action to recover compensation for the actual taking of the easement outside the original 60 foot right of way is not barred. Consolidated Statutes 3846(bb).

APPEAL by plaintiff from *McConnell, J.,* 25 May Session 1964 of FORSYTH.

This is an action instituted by the plaintiff pursuant to the provisions of G.S. 136-111, to obtain compensation for the alleged taking by the North Carolina State Highway Commission (Commission) of a 20-foot strip of land on the east side of U. S. Highway 52 in Bethania Township, Forsyth County, North Carolina.

Pernelia C. Browning and the plaintiff, her daughter, Bernice Browning, became the owners of Lots Nos. 6, 7, 8 and 9 of the N. O. Covington property as shown in Plat Book 4, page 110, in the office of the Register of Deeds of Forsyth County, by warranty deed dated 27 October 1944, as tenants in common. Pernelia C. Browning died 3 June 1951, leaving her one-half undivided interest in the above lots to the plaintiff who has lived in the house on Lots 6, 7, 8 and 9 of the Covington property since 27 October 1944. Plaintiff's property has a frontage of 100 feet on the eastern side of U. S. Highway 52.

The undisputed facts may be summarily stated as follows:

At the time the property was purchased a line of power poles ran along the frontage of the property 30 feet from the center of the highway. The plaintiff has never signed any right of way agreement or release with the Commission, and has never been paid any damages by the Commission.

In 1949, the Commission resurfaced U. S. Highway 52 and widened it from 18 feet of hard surface to 22 feet.

On 7 April 1949, Pernelia C. Browning executed to the Commission a right of way agreement for a consideration of $100.00, granting the Commission a 50-foot right of way from the center of the highway across the front of the above property.

There is evidence tending to show that the plaintiff knew that her mother had signed some agreement with the Commission in consideration of the payment of $100.00 for damages in connection with the road widening project in 1949. However, there is no evidence tending to show that this plaintiff was ever informed that the paper executed by her mother was a right of way agreement extending the Commission's right of way from 30 to 50 feet from the center of the highway across the front of her property.

There is no evidence tending to show that the 1949 project was not constructed entirely within the original right of way of 60 feet, 30 feet on either side from the center of the original 18-foot hard surfaced road. Nor is there any evidence tending to show that the Commission ever exercised any dominion over the additional 20 feet across plaintiff's lots which it contends it obtained in 1949, until 27 July 1962 when plaintiff returned from work she found stakes in her front yard, and the following Monday morning she called the Commission and was informed that the stakes meant they were going to widen Highway 52 into a four-lane highway. On 10 August 1952, when she returned home for lunch she found several maple trees, approximately 40 feet high at the time, knocked over and lying across her front yard; she has never received any compensation for the taking of this additional 20 feet. There is evidence to the effect that the Commission never exercised any dominion whatever over the additional 20 feet now claimed across plaintiff's property prior to its project widening Highway 52 into a four-lane highway.

The Commission, in bar of this action, pleads the six- and twelve-months statutes of limitation contained in Colsolidated Statutes 3846(bb), Chapter 2, § 22, Public Laws of North Carolina of 1921 as amended by Chapter 160, § 6, Public Laws of North Carolina of 1923 and Chapter 1115, Public Laws of North Carolina of 1949. The Commission further contends that said statutes of limitation started to run from the completion of the 1949 repaving project and not from the completion of the project in January 1963. There is no contention that this action was not brought within six months of the completion of the project for widening Highway 52 into a four-lane highway in January 1963.

The Commission offered further evidence tending to show that it posted a map in the courthouse of Forsyth County in 1949, showing a right of way of 100 feet in connection with the resurfacing project; that the Commission placed signs at each end of the project showing that such project was completed, and placed certain markers along the right of way 50 feet from the center of the 22-foot pavement constructed in 1949.

The evidence shows unequivocally that no right of way marker has ever been placed on plaintiff's property, and the nearest marker on the east side of the highway to the north of plaintiff's property is 550 feet therefrom. At the time of the trial, according to the Commission's evidence, no right of way marker then existed on the east side of Highway 52 south of plaintiff's property towards Winston-Salem. There was evidence tending to show that a small sign was placed near the ground on the west side of the highway diagonally across from plaintiff's property; and the evidence further tended to show that this sign much of the time was obscured by undergrowth. This sign carried the following legend:

"NOTICE
RIGHT OF WAY OF THIS HIGHWAY INDICATED BY
MARKERS
ALL ENCROACHMENTS PROHIBITED
SH & PWC"

The court below held that the Commission, on or about 7 April 1949, and in connection with the construction of Highway Project 7453 (in 1949), acquired by purchase from Pernelia C. Browning, deceased, a 100-foot right of way, measuring 50 feet on both sides of the surveyed center line of said highway; that said highway extended over, across and past the lands described in the complaint; that plaintiff Bernice Browning is barred by the provisions of Consolidated Statutes 3846-(bb), Chapter 2, § 22, Public Laws of North Carolina of 1921 as amended by Chapter 160, § 6, Public Laws of North Carolina of 1923 and Chapter 1115, Public Laws of North Carolina of 1949, from recovering any damages from the Commission by reason of the matters and things alleged in the complaint.

Judgment was entered dismissing the action and taxing the plaintiff with the costs.

Plaintiff appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General Harrison Lewis,*

*Trial Attorney Millard R. Rich, Jr.; Blackwell, Blackwell, Canady & Eller for the defendant appellee Commission.*
  *Elledge & Mast for plaintiff appellant.*

DENNY, C.J. The rather careless and haphazard manner in procuring rights of way, together with the lack of clarity and accurateness in the preparation of right of way agreements by the Commission through the years, has been a source of much litigation.

The court below held that the Commission obtained by purchase from Pernelia C. Browning on 7 April 1949, a right of way 50 feet from the center of Highway 52 as it existed in 1949, and that because of the procurement of such right of way the plaintiff herein is barred from recovering any damages in connection therewith.

We concur in the ruling of the court below only as to the one-half undivided interest owned by Pernelia C. Browning at the time she executed such right of way agreement.

The purchase of an easement from one co-tenant does not carry with it an easement in the interest of the other co-tenant. *Hill v. Mining Co.*, 113 N.C. 259, 18 S.E. 171, where this Court said: "It cannot, we think, be seriously contended that the owners of one undivided fourth of a tract of land, through which a railroad is constructed, can be deprived of their rights for the damages due to them assessed under the provisions of section 1944, by the purchase by the railorad company of the rights of one of the other tenants in common."

There is no question about the right of the Commission to procure by dedication, purchase, prescription or condemnation such rights of way as it may deem necessary for highway purposes.

In this case, it is not contended that the Commission obtained the right of way in controversy by dedication, prescription or condemnation. On the one hand, it claims the right of way by purchase from one of the co-tenants involved, and on the other, on the ground that there was a taking in connection with the 1949 widening and resurfacing project which necessitated that any claim for damages be asserted within six months of the date of the completion of that project.

The facts in this case are substantially different from those in the case of *Kaperonis v. Highway Commission*, 260 N.C. 587, 133 S.E. 2d 464. In that case, the deed conveying the property from the predecessors in title to Kaperonis referred to a certain plat which showed an existing 50-foot right of way across the property conveyed, and the plat was made a part of the description. Moreover, the plat was introduced in evidence and identified as the plat referred to and incorporated in the deed. Furthermore, the predecessors in title to Kaperonis

had signed a release of claim for damages in consideration of $850.00 paid to them by the Highway Commission, which release was signed upon completion of the project involved in 1929. In our opinion, the evidence in the *Kaperonis* case was sufficient to have established a right of way by prescription, had the Commission not theretofore purchased the right of way from his predecessors in title.

In the instant case, there is no evidence on the record tending to show that the Commission ever authorized the procurement of a 100-foot right of way in connection with the widening and repaving project in 1949, as there was in the *Kaperonis* case. There is evidence that the plans and specifications called for a 100-foot right of way. Even so, there is no evidence tending to show that the plans and specifications for the 1949 project were available to the plaintiff or anyone else, other than the contractors and the Highway officials and employees. There is evidence tending to show that a map was posted in the courthouse in Forsyth County, which map showed a 100-foot right of way thereon. But there is no evidence as to who posted the map, when it was posted, or how long it remained posted, except the evidence with respect thereto by one of the Commission's engineers who testified that he saw the map while it was posted sometime in 1949.

In the case of *Penn v. Carolina Virginia Coastal Corp.*, 231 N.C. 481, 57 S.E. 2d 817, which was an action to recover compensation for property alleged to have been taken pursuant to the condemnation law of North Carolina, it is said: "* * * '(T)aking' under the power of eminent domain may be defined as 'entering upon private property for more than a momentary period, and, under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.' 18 Am. Jur. 756, Eminent Domain, Sec. 132.

"Moreover, 'what is a taking of property within the due process clause of the Federal and State constitutions,' the text writers say, 'is not always clear, but so far as general rules are permissible of declaration on the subject, it may be said that there is a taking when the act involves an actual interference with, or disturbance of property rights, resulting in injuries which are not merely consequential or incidental.' 18 Am. Jur. 757, Eminent Domain, Sec. 132."

*Ibid.*, § 144, page 772: "It is the general rule that a mere plotting or planning in anticipation of a public improvement is not a taking or damaging of the property affected. Thus, the recording of a map showing proposed highways, without any provision for compensation to the landowners until future proceedings of condemnation are taken to ob-

tain the land, does not constitute a taking of the land, or interfere with the owner's use and enjoyment thereof. No damages are collectible until a legal opening occurs by the actual taking of the land. When the appropriation takes place, any impairment of value from such preliminary steps becomes merged, it is said, in the damages then payable. * * *"

In the case of *Martin v. United States,* 240 F. 2d 326 (1957), the United States, grantee of the State of North Carolina, was contending that no physical entry or evidence thereof was necessary to the acquisition of title, but that the same was acquired by the State of North Carolina by the mere filing and registration of maps, as provided under Chapter 2 of the Public Laws of 1935 (now a part of G.S. 136-19). In holding that the registration of maps was insufficient to divest the owner of title to his lands, *Parker, Chief Judge,* speaking for the Court, said: "It is true that, in ordinary cases where there has been an actual entry upon the land and the exercise of dominion pursuant to the statute authorizing the taking, the registration of a map showing the land taken pursuant to the statute will mark the time of the passage of the title; but we do not think that it was ever intended that the Highway Commission, already in possession of a traveled highway, could get title to adjacent lands by simply registering a map covering them, without exercising any rights of dominion or possession and without notice to the owners. As said by Mr. Justice Holmes in *Ramapo Water Co. v. City of New York,* 236 U.S. 579, 585, 35 S. Ct. 442, 59 L. Ed. 731, nothing but a specific decision of the highest court of the state would make us believe that such effect was to be accorded to the simple filing of a map. It is not necessary to decide whether, in the light of the due process clause, the mere filing of the map without any sort of notice could constitutionally be given such effect by statute; for we do not think that the statute of North Carolina upon which the government relies was ever intended to have such effect. The statute relied upon is the Act of January 23, 1935, Public Laws of 1935, ch. 2, * * *.

"* * * The statute did, indeed, provide for the filing of a map with provision that title should vest in the Commission upon such filing; but this must be construed along with the other language of the section which clearly contemplated that such filing should be in addition to and not in lieu of the existing procedures required for condemnation, its purpose being to facilitate conveyance to the United States of title properly acquired by 'purchase, donation, or condemnation.' That such entry upon the property as would amount to a taking by the government was contemplated as a prerequisite to a valid condemnation,

even if the map were filed as provided by the statute, is shown by the requirement that actions to recover compensation for land taken must be brought within six months, if notice of the completion of the project has been posted at the courthouse door of the county and at the end of the project, otherwise within twelve months of the completion of the project. General Statutes 136-19. The completion of the project is, in ordinary cases, a clear taking of the owner's property and notice to him of the taking. This is not true, however, where the project consists of the mere paving of an existing public highway. Such paving, where the rights of the public are unquestioned, would be no assertion of rights over adjacent land or notice to the owners that such rights were being asserted."

A property owner has a constitutional right to just compensation for the taking of his property for a public purpose, and such property owner is entitled to a reasonable notice and a reasonable opportunity to be heard on the question of damages for the taking. Under the evidence presented by the Commission in the court below, we hold that no reasonable notice was given to the plaintiff herein of a taking of her property until July or August 1962 when the Commission first exercised dominion over the property. *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129.

In the last cited case, after pointing out that the right to authorize the power of eminent domain and the mode of the exercise thereof is wholly legislative, *Parker, J.,* speaking for the Court, said: "* * * However, as both the Federal and our State Constitutions protect all persons from being deprived of their property for public use without the payment of just compensation and a reasonable notice and a reasonable opportunity to be heard, proceedings to condemn property must not violate these guaranties. *Dohany v. Rogers,* 281 U.S. 362, 74 L. Ed. 904."

Likewise, in the case of *Jennings v. Highway Commission,* 183 N.C. 68, 110 S.E. 583, Hoke, J., said: "* * * (I)t is not necessary to notify the owner that his property is to be appropriated, provided he is notified and given opportunity to appear and be heard on the question of the compensation that may be due him. *S. v. Jones, supra* (139 N.C. 613, 52 S.E. 240); *Kinston v. Loftin,* 149 N.C. 255 (62 S.E. 1069); 15 Cyc. 632."

In *Highway Commission v. Young,* 200 N.C. 603, 158 S.E. 91, the Commission had passed an ordinance to the effect that the right of way on all State highways, except as otherwise designated by appropriate signs on the ground, was extended 30 feet from the center of the highway. The defendant began the construction of a filling station at

the intersection of two highways within the rights of way of both highways. The action was instituted for the purpose of requiring the removal of the structure from the rights of way established by the Commission. This Court said: "The due process clause is not violated by failure to give the owner of property an opportunity to be heard as to the necessity and extent of appropriating his property to public use; but it is essential to due process that the mode of determining the compensation to be paid for the appropriation be such as to afford the owner an opportunity to be heard. * * * The laying out of the rights of way by the plaintiff manifested a purpose to acquire an easement in the entire width of each highway for the use of the public, although only a part would ordinarily be used for travel. * * * But the mere laying out of a right of way is not in contemplation of law a full appropriation of the property within the lines. Complete appropriation occurs when the property is actually taken for the specified purpose after due notice to the owner; and the owner's right to compensation arises only from the actual taking or occupation of the property by the Highway Commission. When such appropriation takes place the remedy prescribed by the statute is equally available to both parties. * * * It follows that section 3846(bb) of the N.C. Code of 1927, authorizing the Highway Commission to enter upon and take possession of the land before bringing condemnation proceedings and before making compensation is not an infraction of the due-process clause; and we find nothing in the record indicating a purpose to deprive the defendants of notice with respect to the assessment of damages."

The judgment below is affirmed as to the one-half interest in the property involved which Pernelia C. Browning devised to the plaintiff, but reversed as to the one-half interest in the property involved which the plaintiff purchased in 1944.

Affirmed in part

Reversed in part and

Remanded for further proceedings.