BERGER, Judge.
*404 The North Carolina Department of Transportation ("NCDOT") appeals an October 3, 2016 order (the "Order") that addressed three issues in an inverse condemnation action filed by two hundred and eleven plaintiffs in both Forsyth and Guilford Counties against NCDOT seeking just compensation for the regulatory taking effectuated by NCDOT's recordation of a transportation corridor map pursuant to N.C. Gen. Stat. § 136-44.50 to .54 (the "Map Act"). In some instances, the plaintiff's property rights were taken almost two decades ago. The appealed order granted nine plaintiffs' summary judgment motion as directed by our Supreme Court and this Court, partially granted the remaining plaintiffs' motion for judgment on the pleadings, and set forth the rules and procedures by which the trial court would *493 adjudicate the remaining issues of the individual cases.
To establish grounds for immediate review of the interlocutory order, NCDOT asserts two substantial rights that it alleges would not be fully and adequately protected by appellate review after final judgment. First, NCDOT argues that decisions involving title and area taken in eminent domain proceedings affect a substantial right and are appropriate for immediate review. While this is a substantial right, and may justify interlocutory review, it is a right of one who holds an interest in property, not a right of the condemnor if that condemnor holds no interest. NCDOT has not argued that it holds any interest in the properties at issue in this appeal. Therefore, this ground for interlocutory review must fail.
Second, NCDOT argues that decisions depriving the State of its right to sovereign immunity affect a substantial right and require immediate review. Again, this is generally a substantial right and could certainly justify our interlocutory review, except that the litigation has progressed *405 well past the point where sovereign immunity could be asserted, as it is a jurisdictional bar to suit against the State. Furthermore, sovereign immunity does not bar suit against the State when the State has exercised its eminent domain power. Therefore, in this instance, sovereign immunity provides no protection for the State, and NCDOT's assertion of sovereign immunity appears to be for no reason but either delay or distraction.
Because sovereign immunity has generally been held to be a substantial right allowing interlocutory appeal, NCDOT initially introduces its argument attempting to establish grounds for appellate review as one of sovereign immunity. Yet, the substance of its argument quickly shifts to a separation of powers argument in which NCDOT asserts that the judicial branch is barred from ordering the executive branch to expend monies from the state treasury absent an appropriation of the legislative branch. See N.C. Const. art. V, § 7 ("No money shall be drawn from the State treasury but in consequence of appropriations made by law."). However, NCDOT cites no precedent whereby this Constitutional restriction of power creates for it a substantial right that could permit NCDOT interlocutory review.
"There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." Veazey v. Durham , 231 N.C. 357, 363, 57 S.E.2d 377, 382, reh'g denied , 232 N.C. 744, 59 S.E.2d 429 (1950). When the State takes private property for a public use, it must pay just compensation. Sovereign immunity will not relieve it of this restriction on the use of its eminent domain power. Because both grounds given by NCDOT to justify our interlocutory review fail, we dismiss.
Factual & Procedural Background
The order NCDOT has herein appealed was entered October 3, 2016. In the order, the trial court followed the instructions of this Court, that reversed a prior order, and the Supreme Court, that affirmed the opinion of this Court. Kirby v. N.C. Dep't of Transp. (Kirby I) , 239 N.C. App. 345, 769 S.E.2d 218, appeal dismissed, disc. review allowed , --- N.C. ----, 775 S.E.2d 829 (2015), aff'd, Kirby v. N.C. Dep't of Transp. (Kirby II) , 368 N.C. 847, 786 S.E.2d 919 (2016). Because only procedural aspects of this case have changed since Kirby II , we adopt that opinion's recitation of the pertinent facts:
In 1987 the General Assembly adopted the Roadway Corridor Official Map Act (Map Act). Act of Aug. 7, 1987, *406 ch. 747, sec. 19, 1987 N.C. Sess. Laws 1520, 1538-43 (codified as amended at N.C.G.S. §§ 136-44.50 to -44.54 (2015)); see also N.C.G.S. §§ 105-277.9 to -277.9A, 160A-458.4 (2015). Under the Map Act, once NCDOT files a highway corridor map with the county register of deeds, the Act imposes certain restrictions upon property located within the corridor for an indefinite period of time. N.C.G.S. § 136-44.51. After a corridor map is filed, "no building permit shall be issued for any building or structure or part thereof located within the transportation corridor, nor shall approval of a subdivision, as defined in G.S. 153A-335 and G.S. 160A-376, be granted with respect to property *494 within the transportation corridor." Id . § 136-44.51(a) [.] ... Despite the restrictions on improvement, development, and subdivision of the affected property, or the tax benefits provided, NCDOT is not obligated to build or complete the highway project.
....
Plaintiffs are landowners whose properties are located within either the Western or Eastern Loops of the Northern Beltway, a highway project planned around Winston-Salem. Plaintiffs allege that the project "has been planned since 1965, and shown on planning maps since at least 1987 with the route determined by the early 1990s."
On 6 October 1997, in accordance with the Map Act, NCDOT recorded a highway transportation corridor map with the Forsyth County Register of Deeds that plotted the Western Loop of the Northern Beltway. Plaintiffs whose properties are located within the Western Loop had all acquired their properties before NCDOT recorded the pertinent corridor map. On 26 November 2008, NCDOT recorded a second map that plotted the Eastern Loop. Plaintiffs whose properties are located within the Eastern Loop had also purchased their properties before NCDOT recorded that corridor map, some as recently as 2006. The parties do not dispute that the Map Act imposed restrictions on property development and division as soon as NCDOT recorded the corridor maps.
The NCDOT has voluntarily purchased at least 454 properties within the beltway through condemnation *407 proceedings, and since July 2010, has continued to purchase property located in the Western and Eastern Loops. In June 2013, NCDOT announced a public hearing regarding modification of the Western Loop boundaries, noting that "[a] 'Protected Corridor' has been identified that includes the areas of the beltway that the Department expects to purchase to build the proposed road." At the hearing an NCDOT official advised that "no funding for the proposed Western Section of the Northern Beltway had been included in the current" budget through 2020 and that there was "no schedule" establishing when construction would start.
From October 2011 to April 2012, following denial of their motion for class certification, Beroth Oil Co. v. NCDOT (Beroth II ) , 367 N.C. 333, 347, 757 S.E.2d 466, 477 (2014), aff'g in part and vacating in part Beroth Oil Co. v. NCDOT (Beroth I ) , 220 N.C. App. 419, 725 S.E.2d 651 (2012), plaintiffs filed separate complaints against NCDOT, asserting various, similar constitutional claims related to takings without just compensation, including inverse condemnation. On 31 July 2012, the Chief Justice certified plaintiffs' cases as "exceptional" under Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and the trial court subsequently consolidated plaintiffs into the same group for case management purposes.
The NCDOT timely answered, asserted various affirmative defenses, including, inter alia , lack of standing, and moved to dismiss plaintiffs' claims under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure. On 8 January 2013, the trial court entered an order denying NCDOT's motion to dismiss the claim for inverse condemnation.
All parties moved for summary judgment. The trial court first determined that plaintiffs failed to establish a taking, reasoning that "a regulatory taking" by police power only occurs when the legislation "deprive[s] the property of all practical use, or of all reasonable value" (citing and quoting Beroth I , 220 N.C. App. at 436-39, 725 S.E.2d at 661-63 ), and that the "mere recording of project maps do[es] not constitute a taking" (citing, inter alia , *408 Browning v. N.C. State Highway Comm'n , 263 N.C. 130, 135-36, 139 S.E.2d 227, 230-31 (1964) ). Therefore, the trial court concluded the inverse condemnation claim was "not yet ripe" and granted summary judgment for NCDOT, dismissing the claim without prejudice. Plaintiffs appealed the dismissal and summary judgment orders to the Court of Appeals, and NCDOT cross-appealed the same, arguing for dismissal "with prejudice." *495 The Court of Appeals reversed the dismissal of plaintiffs' inverse condemnation claim. Kirby [I] . The Court of Appeals concluded that, unlike regulations under the police power, which the State deploys to protect the public from injury, "the Map Act is a cost-controlling mechanism," id . at [363], 769 S.E.2d at 232, that employs the power of eminent domain, allowing NCDOT "to foreshadow which properties will eventually be taken for roadway projects and in turn, decrease the future price the State must pay to obtain those affected parcels," id . at [363], 769 S.E.2d at 232 (quoting Beroth II , 367 N.C. at 349, 757 S.E.2d at 478 (Newby, J., dissenting in part and concurring in part)). The Court of Appeals determined that the Map Act imposed restrictions on "Plaintiffs' ability to freely improve, develop, and dispose of their own property," id . at [367], 769 S.E.2d at 235, that "never expire," id . at [366], 769 S.E.2d at 234 (quoting Beroth II , 367 N.C. at 349, 757 S.E.2d at 478 ), and that, as a result, the Map Act effectuated a taking of their "elemental [property] rights," id . at [366], 769 S.E.2d at 234. Therefore, the Court of Appeals concluded that plaintiffs' inverse condemnation claim was ripe and remanded the matter for a "discrete fact-specific inquiry," id . at [368], 769 S.E.2d at 235 (quoting and discussing Beroth II , 367 N.C. at 343, 757 S.E.2d at 474 (majority opinion)), to determine "the amount of compensation due," id . at [368], 769 S.E.2d at 236.
Kirby II , 368 N.C. at 848-52, 786 S.E.2d at 921-23 (footnotes omitted).
The Supreme Court granted NCDOT's petition for discretionary review, and affirmed this Court's opinion in Kirby I . Specifically, the Supreme Court held, inter alia : "The language of the Map Act plainly points to future condemnation of land in the development of corridor highway projects, thus requiring NCDOT to invoke eminent domain." Id . at 854, 786 S.E.2d at 925. "The Map Act's indefinite restraint on fundamental property rights is squarely outside the scope of the police power."
*409 Id. at 855, 786 S.E.2d at 925. "Justifying the exercise of governmental power in this way would allow the State to hinder property rights indefinitely for a project that may never be built." Id. "The societal benefits envisioned by the Map Act are not designed primarily to prevent injury or protect the health, safety, and welfare of the public. Furthermore, the provisions of the Map Act that allow landowners relief from the statutory scheme are inadequate to safeguard their constitutionally protected property rights." Id.
The Supreme Court concluded by stating that:
Through inverse condemnation the owner may recover to the extent of the diminution in his property's value as measured by the difference in the fair market value of the property immediately before and immediately after the taking. Obviously, not every act or happening injurious to the landowner, his property, or his use thereof is compensable. Thus, to pursue a successful inverse condemnation claim, a plaintiff must demonstrate not only a substantial interference with certain property rights but also that the interference caused a decrease in the fair market value of his land as a whole.
By recording the corridor maps at issue here, which restricted plaintiffs' rights to improve, develop, and subdivide their property for an indefinite period of time, NCDOT effectuated a taking of fundamental property rights. On remand, the trier of fact must determine the value of the loss of these fundamental rights by calculating the value of the land before the corridor map was recorded and the value of the land afterward, taking into account all pertinent factors, including the restriction on each plaintiff's fundamental rights, as well as any effect of the reduced ad valorem taxes. Accordingly, the trial court improperly dismissed plaintiffs' inverse condemnation claim.
Id. at 855-56, 786 S.E.2d at 925-26 (citations and internal quotation marks omitted).
After the case was remanded, the trial court entered the order herein appealed on October 3, 2016, which had followed the instructions given by both Appellate Courts. That order granted Plaintiffs' motion for partial judgment on the pleadings pursuant to *496 Rule 12(c) of the North Carolina Rules of Civil Procedure, finding a taking of Plaintiffs' *410 fundamental property rights had occurred by inverse condemnation; granted Plaintiffs' partial summary judgment finding a taking; and established the rules and procedures by which NCDOT would file plats, appraise Plaintiffs' properties, deposit just compensation, as well as any hearing or trial schedules and procedures as may be required moving forward. NCDOT timely appealed.
Analysis
"The threshold question is whether this case is properly before us." Burlington Industries, Inc. v. Richmond County, 90 N.C. App. 577, 579, 369 S.E.2d 119, 120 (1988) (citing In re Watson , 70 N.C. App. 120, 318 S.E.2d 544 (1984), disc. review denied , 313 N.C. 330, 327 S.E.2d 900 (1985) ). An order is either "interlocutory or the final determination of the rights of the parties." N.C. Gen. Stat. § 1A-1, Rule 54(a) (2015). As a general principle, "there is no right to appeal from an interlocutory order." Darroch v. Lea , 150 N.C. App. 156, 158, 563 S.E.2d 219, 221 (2002) (citation omitted). "An appeal is interlocutory when noticed from an order entered during the pendency of an action, which does not dispose of the entire case and where the trial court must take further action in order to finally determine the rights of all parties involved in the controversy." Peterson v. Dillman , 245 N.C. App. 239, ----, 782 S.E.2d 362, 365 (2016) (citation omitted). Here, the appealed order did not resolve all issues of this case and is interlocutory. The trial court, along with NCDOT, had further actions required before a final determination of all rights of all parties could be made.
NCDOT has argued that N.C. Gen. Stat. § 1-277 gives it grounds for immediate review. Section 1-277 states, in pertinent part, that "[a]n appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding." N.C. Gen. Stat. § 1-277(a) (2015). For this Court to have jurisdiction for interlocutory review of the appealed order, NCDOT, as "the appellant[,] has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." Jeffreys v. Raleigh Oaks Joint Venture , 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). NCDOT must also bear
the burden of demonstrating that the order from which [it] seeks to appeal is appealable despite its interlocutory nature. Thus, the extent to which an appellant is entitled *411 to immediate interlocutory review of the merits of [its] claims depends upon [it] establishing that the trial court's order deprives the appellant of a right that will be jeopardized absent review prior to final judgment.
Richmond Cnty. Bd. of Educ. v. Cowell , 225 N.C. App. 583, 585, 739 S.E.2d 566, 568 (citations and internal quotation marks omitted), disc. review denied , 367 N.C. 215, 747 S.E.2d 553 (2013). "The appellants must present more than a bare assertion that the order affects a substantial right; they must demonstrate why the order affects a substantial right." Hoke Cnty. Bd. of Educ. v. State , 198 N.C. App. 274, 277-78, 679 S.E.2d 512, 516 (citation omitted), disc. review denied , 363 N.C. 653, 686 S.E.2d 515 (2009).
"As our Supreme Court candidly admitted, the 'substantial right' test is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context[.]" LaFalce v. Wolcott , 76 N.C. App. 565, 568, 334 S.E.2d 236, 238 (1985) (citation and internal quotation marks omitted). In determining the appealability of interlocutory orders *497 under the substantial right exception, a two-part test has evolved: (1) "the right itself must be 'substantial,' " and (2) "the enforcement of the substantial right must be lost, prejudiced or be less than adequately protected by exception to entry of the interlocutory order." J & B Slurry Seal Co. v. Mid-South Aviation, Inc. , 88 N.C. App. 1, 5-6, 362 S.E.2d 812, 815 (1987).
Some of our previous "decisions have apparently blurred or otherwise failed to distinguish the two requirements of appealability under the substantial right exception." Id . at 6, 362 S.E.2d at 815 (citing, e.g., New Bern Assoc. v. The Celotex Corp. , 87 N.C. App. 65, 359 S.E.2d 481, 483 (1987) (defining "substantial right" as "one which will be lost")). "More important, some decisions have completely omitted the requirement that the right be lost or prejudiced if not immediately appealed." Id . at 6, 362 S.E.2d at 816. "While we value the case-by-case flexibility afforded us by the substantial right test, appellate application of this statutory test need not be so uncertain or inconsistent that premature or fragmentary appeals are needlessly encouraged." Id . at 9, 362 S.E.2d at 817. Bearing all of these considerations in mind,[1] we address each of NCDOT's arguments attempting to establish grounds for interlocutory review.
*412 I. Title & Area Taken
First, NCDOT has asserted that our immediate review is proper because "interlocutory orders concerning title or area taken must be immediately appealed as vital preliminary issues involving substantial rights adversely affected." N.C. Dep't Of Transp. v. Stagecoach Village , 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) (citation and internal quotation marks omitted). However, this substantial right accrues only to one who holds an interest in the subject property of the eminent domain proceeding, if title to the interest is contested, or to a party who contends that the area taken is different from that identified by the condemnor on the map or plat of the land taken filed by the condemnor pursuant to Article 9 of Chapter 136. Lautenschlager v. Board of Transportation , 25 N.C. App. 228, 212 S.E.2d 551, cert. denied , 287 N.C. 260, 214 S.E.2d 431 (1975). See N.C. Gen. Stat. §§ 136-104, -108, and -111 (2015); see also Berta v. Highway Comm. , 36 N.C. App. 749, 754-55, 245 S.E.2d 409, 412 (1978) ("The provisions of G.S. 136-108 apply to condemnation proceedings under G.S. 136-111 as well as under G.S. 136-104." (citation omitted)).
In Article 9, Section 108 provides:
After the filing of the plat, the judge, upon motion and 10 days' notice by either the Department of Transportation or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land , interest taken, and area taken .
N.C. Gen. Stat. § 136-108 (2015) (emphasis added).
The government authority effectuating the taking has no substantial right justifying interlocutory review of an order concerning title or area taken unless and until that condemnor has filed a map or plat pursuant to Article 9 identifying the property subject to eminent domain proceedings and condemnation. In this case, the order being appealed by NCDOT established, inter alia , the procedures and timetable by which *413 NCDOT would file plats identifying the interests and areas taken so as to comply with Article 9. Therefore, asserting that NCDOT has a substantial right justifying interlocutory review affected by a decision involving title and area taken is premature, at best.
NCDOT also cites to Kirby I in asserting that "an order granting partial summary judgment on the issue of NCDOT's liability to pay just compensation for a claim of inverse condemnation is an immediately appealable interlocutory order affecting a substantial right." Kirby I , 239 N.C. App. at 354, 769 S.E.2d at 227. NCDOT further argues *498 that the trial court's order impacts the identical rights that were impacted in Kirby I and II , but from the perspective of the opposite party. This argument is without merit because it asks that we allow previously decided matters to be re-litigated. Of course the order impacts the identical rights but from the opposite party's perspective. This Court, as affirmed by the Supreme Court, reversed the trial court on this issue. For that reason, the trial court did as directed and ordered that summary judgment be granted to the "opposite party" than to the party it had been previously granted.
NCDOT has not carried its burden of demonstrating that the order from which it seeks to appeal is appealable despite its interlocutory nature because it is unable to show that, as an order involving title and area taken, the order has in fact affected a substantial right of NCDOT. Therefore, we must address NCDOT's second asserted ground for interlocutory appellate review.
II. Sovereign Immunity
NCDOT has asserted sovereign immunity as a substantial right justifying our interlocutory review. "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." Fed. Mar. Comm'n v. S.C. State Ports Auth. , 535 U.S. 743, 760, 122 S.Ct. 1864, 1874, 152 L.Ed.2d 962, 977 (2002). Our Supreme Court has long held that "[i]t is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit." Smith v. Hefner , 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952) (citations omitted).
The common law doctrine of sovereign immunity is a defense to a claim of personal jurisdiction, with specific, legislatively created exceptions, and "mandates that 'the State of North Carolina is immune from suit unless and until it expressly consents to be sued.' " Coastland Corp. v. N.C. Wildlife Resources Comm'n , 134 N.C. App. 343, 346, 517 S.E.2d 661, 663 (1999) (brackets omitted) (quoting *414 State v. Taylor , 322 N.C. 433, 435, 368 S.E.2d 601, 602, reh'g denied , 322 N.C. 838, 371 S.E.2d 284 (1988) ). Sovereign immunity is an entire defense, the successful use of which precludes a party or the courts from forcing the State to answer a suit, not a substantial right justifying interlocutory review of an adverse ruling on a technical question within a suit. See Burlington Industries, Inc. , 90 N.C. App. 577, 369 S.E.2d 119 ; Love v. Moore , 305 N.C. 575, 291 S.E.2d 141, reh'g denied , 306 N.C. 393 (1982).
While, particular to this case, "[t]he power of eminent domain, that is, the right to take private property for public use, is inherent in sovereignty," Morganton v. Hutton & Bourbonnais Company , 251 N.C. 531, 533, 112 S.E.2d 111, 113 (1960), sovereign immunity must be juxtaposed with the contrary sovereignty of the individual, whose natural rights preceded government and were enumerated in the federal Bill of Rights and our own State Constitution's Declaration of Rights. Our Supreme Court held that "[t]he doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights." Corum v. University of North Carolina , 330 N.C. 761, 785-86, 413 S.E.2d 276, 291, reh'g denied , 331 N.C. 558, 418 S.E.2d 664, cert. denied sub nom. Durham v. Corum , 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992).
In American jurisprudence, the rights and powers of our dual sovereigns, federal and state, were created through a grant of power from the citizens themselves and are derivative of the "certain unalienable rights" endowed to all persons by their Creator. The Declaration of Independence para. 2 (U.S. 1776); see also N.C. Const. art. I, § 1 ("We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."); § 2 ("All political power is vested in and derived from the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the *499 good of the whole."). The state was created as sovereign to secure these natural rights of her citizens, Declaration of Independence para. 2 (U.S. 1776) ("That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed...."), and "[s]uch constitutional rights are a part of the supreme law of the State." Corum , 330 N.C. at 786, 413 S.E.2d at 291-92 (citing State ex rel. Martin v. Preston , 325 N.C. 438, 385 S.E.2d 473 (1989) ). "[T]he doctrine of sovereign immunity is not a constitutional right; it is a common law theory or defense established by [our Supreme] Court.... Thus, when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." Id. at 786, 413 S.E.2d at 292. *415 Every expropriation of a citizen's fruits of his or her labor by the government is a taking, whether through taxation or by the power of eminent domain. However, of all rights enumerated in our constitutions, only the taking of an individual's property rights by the sovereign for public use requires remuneration. This right "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States , 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561 (1960).
Both our State and Federal Constitutions condition the exercise of eminent domain with the required payment of just compensation. "Although the North Carolina Constitution does not expressly prohibit the taking of private property for public use without payment of just compensation, our Supreme Court has considered this fundamental right as part of the 'law of the land' clause in article I, section 19 of our Constitution." Guilford Co. Dept. of Emer. Serv. v. Seaboard Chemical Corp. , 114 N.C. App. 1, 11, 441 S.E.2d 177, 182-83 (citation omitted), disc. review denied , 336 N.C. 604, 447 S.E.2d 390 (1994). Furthermore, the Fifth Amendment to the United States Constitution requires that just compensation be paid when private property be taken for public use. U.S. Const. amend V. Through the due process clause of the Fourteenth Amendment to the Federal Constitution, the Fifth Amendment applies this condition for taking private property for public use to the states. Delaware, L., & W.R. Co. v. Town of Morristown , 276 U.S. 182, 193, 48 S.Ct. 276, 278-79, 72 L.Ed. 523, 528 (1928). "The constitutional guaranty of just compensation is not a limitation of the power to take, but only a condition of its exercise." Long Island Water-Supply Co. v. City of Brooklyn , 166 U.S. 685, 689, 17 S.Ct. 718, 720, 41 L.Ed. 1165, 1166 (1897).
Our General Assembly has expressly granted NCDOT the power of eminent domain. N.C. Gen. Stat. § 136-18 and -19 (2015). In establishing a framework by which NCDOT can condemn private property, it also conferred statutory rights to landowners by which they could seek just compensation, in addition to their Constitutional right. See N.C.G.S. Chpt. 136, Art. 9 (2015). To hold the State accountable for payment of just compensation following a taking of private property, a landowner must approach the sovereign in her courts by filing suit pursuant to statute. Id. This is true even though "[t]he right to compensation for property taken under the power of eminent domain does not rest solely upon statute because property owners have a constitutional right to just compensation for takings." Ferrell v. Dept. of Transportation , 104 N.C. App. 42, 46, 407 S.E.2d 601, 604 (1991) (citing *416 Browning v. Highway Commission , 263 N.C. 130, 137, 139 S.E.2d 227, 231 (1964) ), aff'd , 334 N.C. 650, 435 S.E.2d 309 (1993).
Because the General Assembly has established the statutory framework conferring rights to landowners when the State has exercised its eminent domain power, the State has implicitly waived sovereign immunity to the extent of the rights afforded in Chapter 136 of our General Statutes. Ferrell , 334 N.C. at 655, 435 S.E.2d at 313. Therefore, to the extent the plaintiffs sub judice are within this framework through which the State pays just compensation for a taking, sovereign immunity is waived.
However, NCDOT disputes that the plaintiffs have a right to just compensation, and has consistently and strenuously argued *500 that the trial court erred in applying Section 111 of Chapter 136 to the cases in which no taking has been admitted, and that error is what affects NCDOT's substantial right justifying interlocutory review. Section 111 grants "any person whose land or compensable interest therein" a remedy when said land or interest has been taken and no declaration of taking has been filed by NCDOT, as is the case here. Section 111 states, in pertinent part, that:
if said taking is admitted by the Department of Transportation, it shall, at the time of filing answer, deposit with the court the estimated amount of compensation for said taking and notice of said deposit shall be given to said owner. Said owner may apply for disbursement of said deposit and disbursement shall be made in accordance with the applicable provisions of G.S. 136-105 of this Chapter. If a taking is admitted, the Department of Transportation shall, within 90 days of the filing of the answer to the complaint, file a map or plat of the land taken.
N.C. Gen. Stat. § 136-111 (2015).
In its pleadings filed prior to July 15, 2015, NCDOT consistently admitted that it had filed transportation corridor maps for the Northern Beltway, that the filing of the maps placed restrictions upon the properties located within the corridor's borders, and that the property of the particular plaintiff to whose complaint NCDOT was responding was within the corridor's borders. As our Supreme Court held, "[t]hese restraints, coupled with their indefinite nature, constitute a taking of plaintiffs' elemental property rights by eminent domain." Kirby II , 368 N.C. at 848, 786 S.E.2d at 921.
*417 However, NCDOT consistently denied that a taking had occurred. In all pleadings filed post-July 15, 2015, NCDOT made a general denial of all allegations, even denying the existence of NCDOT as a legal entity and its ability to own property. To those responses to allegations filed after July 15, 2015, the trial court applied what it described in the order herein appealed as "the doctrine of legal estoppel" to hold that NCDOT's "general denials in its post-July 15, 2015 filings are legally untenable and are therefore deemed admitted."
This deemed admission had the effect of placing the plaintiffs sub judice squarely in the scope of Section 111, allowing them to enforce their right to just compensation for the regulatory taking. Substantively, while calling the doctrine used to establish this admission "legal estoppel," the trial court applied the doctrine of judicial estoppel , which has long been a part of the common law of North Carolina but expressly adopted by our Supreme Court in Whitacre P'ship v. Biosignia, Inc. , 358 N.C. 1, 591 S.E.2d 870 (2004).
Whether our Supreme Court has held that a party "cannot swap horses in midstream," Roberts v. Grogan , 222 N.C. 30, 33, 21 S.E.2d 829, 830 (1942), should not be permitted to "blow hot and cold in the same breath," Kannan v. Assad , 182 N.C. 77, 78, 108 S.E. 383, 384 (1921) (citation and internal quotation marks omitted), or needs to face "the lesson, taught every day in the school of experience, that he cannot safely 'run with the hare and hunt with the hound,' " Rand v. Gillette , 199 N.C. 462, 463, 154 S.E. 746, 747 (1930), it has consistently held that "a party to a suit should not be allowed to change his position with respect to a material matter in the course of litigation." Roberts , 222 N.C. at 33, 21 S.E.2d at 830-31 (citation and internal quotation marks omitted). By prohibiting a litigant from changing positions, "judicial estoppel seeks to protect courts, not litigants, from individuals who would play fast and loose with the judicial system," and is an inherently flexible and discretionary doctrine. Whitacre P'ship , 358 N.C. at 26, 591 S.E.2d at 887 (citation and internal quotation marks omitted). In
[n]oting that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, [our Supreme] Court enumerated three factors that typically inform the decision whether to apply the doctrine in a particular case. First, a party's subsequent position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading *501 a court to accept that party's earlier position, *418 so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
Id. at 28-29, 591 S.E.2d at 888-89 (citations, internal quotation marks, and footnote omitted).
Before July 15, 2015, NCDOT admitted in its pleadings Plaintiffs' allegations that it had recorded the highway corridor map and that this recordation placed restrictions on Plaintiffs' fundamental property rights for an unlimited period of time. It was this set of facts that established for our Supreme Court that a taking had occurred. See Kirby II , 368 N.C. 847, 786 S.E.2d 919. Pleadings filed after July 15, 2015 denied the allegations of these facts, which makes NCDOT's subsequent position 'clearly inconsistent' with its former position. Additionally, NCDOT's prior position was accepted by the courts to such an extent that, when this litigation was previously before our Supreme Court, that Court used these facts as the structure under which it found a taking had occurred. Judicial acceptance of NCDOT's latter inconsistent position does pose a threat to judicial integrity in that it could lead to inconsistent court determinations or the perception that either the first or the second court was misled.
Finally, NCDOT is attempting to avoid payment of just compensation by asserting a technical argument that, because NCDOT has admitted no taking, it therefore will pay no just compensation. This inconsistent position gives NCDOT an unfair advantage in that it effectively ends Plaintiffs' statutory right to pursue a cause of action seeking just compensation. This would most certainly impose an unfair detriment on the Plaintiffs in that their alleged damages suffered as a result of NCDOT's actions would no longer be compensable. It is for these reasons that the trial court found NCDOT's general denials as legally untenable, and deemed the facts establishing that each of the Plaintiffs' properties were within the highway corridor maps' boundaries admitted.
Therefore, because the regulatory taking has effectively been admitted, the Plaintiffs are within the scope of Section 111. Furthermore, because Plaintiffs are suing under both the statutory framework of Section 111, as well as the constitutional framework of takings, sovereign immunity provides no bar to Plaintiffs' suit against NCDOT.
*419 NCDOT also attempts to establish grounds for interlocutory review by asserting within their sovereign immunity argument that our constitutional framework of a tripartite system of government prohibits the judicial branch from enforcing collection of liabilities against the executive branch, citing Article V, Section 7 of the State Constitution. Specifically, NCDOT argues that the trial court may not order it to make deposits with the court the estimated amount of compensation for the takings at issue here because said takings have not been admitted by NCDOT. It is this alleged violation of the constitutionally-mandated separation of powers that NCDOT contends further gives it a substantial right affected by the trial court's order which justifies immediate review.
However, as discussed above, the taking contested here has been established and was deemed to have been admitted. As also discussed above, this admission has brought the Plaintiffs' claims within the scope of Section 111, and it is this statute that allows the Plaintiffs an avenue by which they can be compensated for the taking. Therefore, this argument must also fail and we dismiss this appeal.
We must finally note that NCDOT closed its attempt to establish grounds for appellate review with the brief policy argument that irreparable harm would be done to the taxpayers of this state if it is forced to pay deposits to the court for the takings here. While it is admirable to protect the public purse and spend it wisely, this argument is not helpful at this point in the litigation. This should have been a consideration before the highway corridor map was filed. The constitutional *502 right to just compensation when the state takes an individual's private property rights for public use will not be suspended on the mere fact that it may be expensive.
The decision to select certain property on which the state exercises its power of eminent domain is a political decision outside the purview of the judicial branch. "Under our division of governmental power into three branches, executive, legislative and judicial, the right to authorize the exercise of the power of eminent domain, and the mode of the exercise thereof, is wholly legislative." Hedrick v. Graham , 245 N.C. 249, 256, 96 S.E.2d 129, 134 (1957) (citations omitted). In explaining this division of power among the various branches, our Supreme Court cited with approval 18 Am. Jur. Eminent Domain § 9 (1938) which contained the following:
The executive branch of the government cannot, without the authority of some statute, proceed to condemn property for its own uses.... Once authority is given to *420 exercise the power of eminent domain, the matter ceases to be wholly legislative. The executive authorities may then decide whether the power will be invoked and to what extent, and the judiciary must decide whether the statute authorizing the taking violates any constitutional rights; and the fixing of the compensation is wholly a judicial question.
State v. Club Properties , 275 N.C. 328, 334-35, 167 S.E.2d 385, 389 (1969) (citation and internal quotation marks omitted); accord , 26 Am. Jur. 2d Eminent Domain § 5 (2017).
The State's judiciary provides the avenue by which the amount of compensation here will be fixed. While there will be a high monetary price, and conceivably a political price as well, once NCDOT pays just compensation for exercising its eminent domain power, perhaps this will force NCDOT to respect the rights of our individual citizens and not restrict their rights without the ability or willingness to pay.
Conclusion
It was NCDOT that had complete discretion in selecting which parcels of property it would subject to the regulations allowed by the Map Act when it recorded the highway transportation corridor map for the Northern Beltway's Western Loop on October 6, 1997 and Eastern Loop on November 26, 2008. NCDOT has been unable to establish grounds for interlocutory review in this appeal, and we must therefore dismiss. At this juncture, it is NCDOT that must follow the order of the trial court appealed herein and file plats or maps, without further delay, identifying interests and areas taken to comply with G.S. § 136-111 and with the clear mandates of this Court in Kirby I , and our Supreme Court in Kirby II .
Following this, as per the appealed order, either party may schedule a hearing pursuant to Section 108 from which the trial court would determine any and all issues raised by the pleadings other than the issue of damages. The measure of damages can then be determined by a jury pursuant to N.C. Gen. Stat. § 136-112, to which the trial court shall add interest accrued from the date of the taking to the date of judgment pursuant to N.C. Gen. Stat. § 136-113, as well as reimbursement of costs, disbursements, and expenses pursuant to N.C. Gen. Stat. § 136-119.
As previously discussed, because it is "necessary to resolve the question in each case by considering the particular facts of that case and *421 the procedural context in which the order from which appeal is sought was entered[,] ... the particular facts and procedural history of the case at bar warrant a dismissal." Moose v. Nissan of Statesville , 115 N.C. App. 423, 430, 444 S.E.2d 694, 699 (1994) (citations and internal quotation marks omitted).
DISMISSED.
Judge ZACHARY concurs.
Judge DILLON dissents with separate opinion.

We especially note that our controlling precedent has established a two-part test for the determination of whether it is appropriate for us to address the merits of an appeal, as opposed to dismissing an appeal as premature. The dissent would allow the merits of this appeal to be reached merely because NCDOT has asserted sovereign immunity or the expending of resources as a substantial right. Simply stating something that has been held to be a substantial right is not sufficient; it must be shown that the appellant possesses the right, that the right is substantial, and that the right would be lost absent interlocutory review. Accordingly, nowhere does the dissent explain how these 'substantial rights' would be lost if interlocutory review was not granted. Furthermore, the dissent conflates reaching the merits of NCDOT's claims with what we are commanded to do: to look at the facts and circumstances of the case to determine whether interlocutory review is appropriate.