IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-227

Filed 15 October 2025

Mecklenburg County, No. 23CVS010275-590

ALAN RAY LUCAS, Plaintiff,

v.

VIRGINIA BRADLEY CHILDRESS, an individual, Defendant.

Appeal by Defendant from order entered 27 August 2024 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 August 2025.

> *Law Office of Habekah B. Cannon, PLLC, by Habekah B. Cannon, for Plaintiff-Appellee.*

> *Poyner Spruill LLP, by J. Nicholas Ellis and Sydney P. Davis, for Defendant-Appellant.*

COLLINS, Judge.

This appeal arises out of a defamation lawsuit instituted by Plaintiff Alan Ray Lucas against Defendant Virginia Bradley Childress. Defendant appeals from the trial court's interlocutory order denying her motion for summary judgment. Defendant argues that her appeal is properly before this Court because the trial court's order affects a substantial right and that the trial court erred in various ways by denying her motion for summary judgment. Because Defendant has failed to show that the interlocutory order denying her motion for summary judgment affects a

substantial right, we dismiss Defendant's appeal.

## I.     Background

Defendant's father, John Roger Bradley, was killed in the early morning hours of 8 May 1992.  On 30 July 1993, Plaintiff was arrested and charged with Bradley's murder, conspiracy to commit robbery with a dangerous weapon, and robbery with a dangerous weapon.  A Wilson County grand jury later returned true bills of indictment against Plaintiff on those charges.

On 7 February 1995, Plaintiff pled guilty to four counts of second-degree burglary for events not related to Bradley's murder and was sentenced to 86 years' imprisonment.  That same day, the charges against Plaintiff stemming from Bradley's murder were dismissed because he agreed to plead guilty to four counts of second-degree burglary and the "evidence in this case not strong enough to sustain a conviction."

Approximately twenty-seven years later, on or around 7 July 2022, Plaintiff was released on parole.  That same day, *The Wilson Times* published an article on the Restoration NewsMedia website titled "Wilson man's killer released on parole after 30 years" that included the following statements made by Defendant:

> We have fought many years to keep [Plaintiff] in prison for his role in Dad's murder.
>
> . . . .
>
> Even though he is being paroled to another county, hours away from Wilson, we still must live with the fact that he

> is out there . . . enjoying life's milestones like weddings, births and birthdays.  There is that chance that one day, I could sit down in a restaurant, walk down an aisle in a store, look next to me at a stop light and I could be looking into the eyes of the man that took away my father's life.
>
> (ellipses in original).

The same article, entitled "Murder convict paroled," was published on the front page of *The Wilson Times* on 8 July 2022.  The article was retracted and corrected, and an apology was issued, on 23 November 2022.

Plaintiff commenced this action by filing a complaint on 20 June 2023 against Defendant, *The Wilson Times* reporter Janelle Clevinger, and Restoration NewsMedia LLC.  In the complaint, Plaintiff alleges "defamation libel per se" and "malice."  Clevinger and Restoration NewsMedia filed a motion to dismiss pursuant to North Carolina Rules of Civil Procedure 12(b)(2), (4), and (5).  Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  The trial court granted Clevinger and Restoration NewsMedia's motion to dismiss for issues related to improper service; the trial court denied Defendant's motion to dismiss.

Defendant filed her answer and affirmative defenses, and on 10 July 2024, Defendant filed a motion for summary judgment.  After a hearing, the trial court entered a written order denying Defendant's motion for summary judgment.  Defendant appeals.

## II.    Appellate Jurisdiction

Defendant appeals from an interlocutory order. "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *N.C. Dept. of Transp. v. Page*, 119 N.C. App. 730, 733 (1995) (citation omitted). As a general rule, there is no right of immediate appeal from an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379 (1994). "The reason for this rule is to prevent fragmentary, premature[,] and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." *Fraser v. Di Santi*, 75 N.C. App. 654, 655 (1985) (citation omitted).

However, a party may immediately appeal an interlocutory order under certain circumstances, including "when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys*, 115 N.C. App. at 379 (quotation marks and citations omitted). Such a determination "usually depends on the facts and circumstances of each case and the procedural context of the orders appealed from." *Estrada v. Jaques*, 70 N.C. App. 627, 642 (1984) (citation omitted).

The burden rests on the appellant to establish the deprivation of a substantial right as the basis for an interlocutory appeal. *Dailey v. Popma*, 191 N.C. App. 64, 68 (2008). Accordingly, the appellant must include in her opening brief a "statement of

the grounds for appellate review" containing "sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4); *see Beroth Oil Co. v. N.C. Dep't of Transp.*, 256 N.C. App. 401, 411 (2017) (emphasizing that an appellant generally "must present more than a bare assertion that the order affects a substantial right; they must demonstrate why the order affects a substantial right") (cleaned up).

In her Statement of the Grounds for Appellate Review, Defendant acknowledges that she appeals from an interlocutory order and correctly sets forth relevant law. This Court has held that "[a]n order implicating a party's First Amendment rights affects a substantial right." *Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 711, 719 (1998) (citation omitted). We have also "recognized, when considering a motion for summary judgment, a misapplication of the actual malice standard could have a chilling effect on a defendant's right to free speech and implicates a substantial right." *Topping v. Meyers*, 270 N.C. App. 613, 617-18 (2020) (citation omitted).

Defendant then asserts, without supporting facts or argument, that "th[is] interlocutory appeal based on the misapplication of the actual malice standard is properly before this Court." This "bare assertion" fails to allege, much less demonstrate, *how* the trial court misapplied the actual malice standard in this case such that her First Amendment rights were implicated. *See Beroth Oil Co.*, 256 N.C. App. at 411. Defendant's statement thus fails "to support appellate review on the

ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4).

Although "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order," *Jeffreys*, 115 N.C. App. at 380 (citation omitted), we looked in the body of Defendant's brief for support for her argument that the trial court misapplied the actual malice standard; we found none.

"[T]o recover for defamation, a plaintiff generally must show that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 37 (2020) (quotation marks and citation omitted). In certain circumstances, the First Amendment requires the plaintiff to present clear and convincing proof of actual malice. *Gaunt v. Pittaway*, 139 N.C. App. 778, 785 (2000). To show that a statement was made with "actual malice," a plaintiff must show the statement was made "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Desmond*, 375 N.C. at 42 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

Defendant asserts here, "[I]nstead of applying the standard for actual malice, the trial court asked whether Plaintiff 'ple[]d guilty to charges – what charges led to his incarceration?'" Defendant contends that "the issue of what charges Plaintiff ultimately pled guilty to bears no connection to whether Defendant" acted with actual malice.

Even assuming without deciding here that Plaintiff is required to show actual malice, the trial court's questions do not indicate a misapplication of the actual malice standard; quite the opposite. The questions probed whether there was a genuine issue of material fact that Defendant's statements were made with knowledge that they were false or with reckless disregard of whether they were false. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2024) (A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that the party "is entitled to a judgment as a matter of law.").

Furthermore, Plaintiff's forecast of evidence of actual malice, viewed in the light most favorable to her and drawing all reasonable inferences in her favor, was sufficient to survive Defendant's summary judgment motion. *See Cummings v. Carroll*, 379 N.C. 347, 358 (2021); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(e) (2025). Plaintiff was indicted on charges of murder and other crimes stemming from Bradley's murder; however, those charges were dismissed because Plaintiff pled guilty to second-degree burglary stemming from events unrelated to Bradley's murder and the "evidence in this case [was] not strong enough to sustain a conviction." Defendant averred that she "was apprised of, and actively involved in [her] father's homicide investigation" and that in 1994, the State's district attorney called her personally to inform her that Plaintiff had accepted a plea bargain.

In a blog post published to the internet by Defendant in July 2012, Defendant

detailed her efforts to keep Plaintiff from being admitted into a program designed to prepare inmates for possible parole. In the post, Defendant shared a letter she sent to the Parole Division opposing Plaintiff's admission into the program wherein she acknowledged that Plaintiff had "entered into a plea agreement to a slew of breaking and entering charges and the charges surrounding the involvement in [her] father's murder were either dismissed or consolidated for judgment." Despite this acknowledgement, the blog post continued to implicate Plaintiff in Bradley's murder. Defendant wrote, "I firmly believe that [Plaintiff], along with the other involved, do not have the right, nor [] should they have any opportunity to enjoy their freedom." She further expressed her feelings on Plaintiff's potential parole:

> I will be honest and admit the amount of rage, hurt, confusion, and emptiness all welled up inside of me at one time. . . .
>
> The justice system, in my humble opinion, gives the offenders more rights than the victims. . . . Imagine how you would feel if you had to find a way each year to convey why one or more of the 'men' that took your loved one away should stay in prison. Why can't the act of killing someone itself be enough?

Defendant also shared her joy at receiving notification from the Parole Division that Plaintiff had been denied entry into the program: "Well I guess I was successful in conveying the feelings and reasons this murderer shouldn't be released back into society. . . . [H]e was DENIED admittance into the program!!!"

Approximately ten years after publishing this blog post, Defendant made the

statements at issue in this case to a reporter:

> We have fought many years to keep [Plaintiff] in prison for his role in Dad's murder.
>
> . . . .
>
> Even though he is being paroled to another county, hours away from Wilson, we still must live with the fact that he is out there . . . enjoying life's milestones like weddings, births and birthdays. There is that chance that one day, I could sit down in a restaurant, walk down an aisle in a store, look next to me at a stop light and I could be looking into the eyes of the man that took away my father's life. (ellipses in original).

Defendant has failed to show that the trial court applied the wrong standard to its inquiry into actual malice or that Plaintiff failed to "set forth specific facts showing that there is a genuine issue for trial," N.C. Gen. Stat. § 1A 1, Rule 56(e), regarding actual malice. Defendant has thus failed to show the trial court misapplied the actual malice standard at summary judgment, and Defendant therefore has failed to show that the order denying her summary judgement "affects a substantial right that would be lost without immediate review." *Dailey*, 191 N.C. App. at 67-68 (citation omitted). Accordingly, this interlocutory appeal is improperly before this Court. We thus are without jurisdiction to review the merits of this appeal.

### III.    Conclusion

For the foregoing reasons, Defendant's appeal from the interlocutory order denying her summary judgment is dismissed.

DISMISSED.

Judges ARROWOOD and FREEMAN concur.