McGEE, Chief Judge.
 

 *383
 
 I.
 
 Factual and Procedural History
 

 A.
 
 General
 

 This appeal involves Article 2E, Chapter 136 of the North Carolina General Statutes, "Transportation Corridor Official Map Act," (the "Map Act"), that has been the source of substantial litigation involving hundreds of real property owners. These "Map Act" cases have been before this Court and our Supreme Court on multiple occasions, and the general factual and procedural history has been repeatedly and thoroughly addressed many times.
 
 See, e.g.,
 

 Beroth Oil Co. v. N.C. Dep't of Transp
 
 .,
 
 220 N.C. App. 419
 
 ,
 
 725 S.E.2d 651
 
 (2012) ("
 
 Beroth I
 
 "),
 
 aff'd in part, vacated in part,
 

 Beroth Oil Co. v. N.C. Dep't of Transp
 
 .,
 
 367 N.C. 333
 
 ,
 
 757 S.E.2d 466
 
 (2014) ("
 
 Beroth II
 
 ");
 
 Beroth Oil Co. v. N.C. Dep't of Transp.
 
 , --- N.C. App. ----,
 
 808 S.E.2d 488
 
 (2017) ("
 
 Beroth III
 
 ");
 
 see also
 

 Kirby v. N.C. Dep't of Transp.
 
 ,
 
 239 N.C. App. 345
 
 ,
 
 769 S.E.2d 218
 
 (2015) ("
 
 Kirby I
 
 "),
 
 aff'd by separate opinion
 
 ,
 
 Kirby v. N.C. Dep't of Transp.
 
 ,
 
 368 N.C. 847
 
 ,
 
 786 S.E.2d 919
 
 (2016) ("
 
 Kirby II
 
 ").
 

 B.
 
 Procedural History of the Present Matter
 

 The present matter involves real property located in Forsyth County (the "Property") owned by Robert B. Stimpson ("Defendant"). Pursuant to its authority under
 
 N.C. Gen. Stat. § 136-44.50
 
 (2015) of the
 
 *384
 
 Map Act, the North Carolina Department of Transportation ("DOT") recorded a Transportation (roadway) Corridor Map for State Project 34839 (the "Corridor Map") with the Register of Deeds, Forsyth County, on 26 November 2008, as part of DOT's Northern Beltway Project (the "Project").
 
 [1]
 
 The Property was included in the Corridor Map, and thus subject to the provisions of the Map Act related to the Project.
 
 [2]
 
 Defendant filed a complaint
 
 *636
 
 in an earlier action ("Defendant's Action") on 9 May 2016, seeking,
 
 inter alia
 
 , a declaratory judgment that the Property had been taken through inverse condemnation by DOT pursuant to DOT's actions under the Map Act, and requesting DOT be ordered "to purchase [the] Property for the inverse condemnation[.]" Defendant moved for judgment on the pleadings, and the trial court consolidated Defendant's Action with a number of additional related actions pursuant to N.C. Gen. Stat. § 1A-1, Rule 42.
 
 [3]
 

 Beroth Oil Co. v. N.C. Dep't. of Transp
 
 ,
 
 2016 WL 9234026
 
 , *1 (N.C. Super. 2016) ("
 
 Beroth
 
 Order"). With regard to the motion in Defendant's Action, the
 
 Beroth
 
 Order determined that (1) the Property was located in the area of the Project; (2) certain property rights of Defendant's were taken by DOT pursuant to inverse condemnation; (3) the trial court was not prepared to rule on whether the taking constituted a fee simple taking; and (4) the issue of the nature of the taking and damages would be revisited.
 
 Id
 
 . at *1-2. The trial court ordered DOT to comply with the procedural requirements of Article 9, Chapter 136, "Condemnation," for all the plaintiffs; including filing plats, obtaining appraisals, and depositing good faith estimates of the value of the properties involved.
 
 Id
 
 . at *2-3. DOT appealed the
 
 Beroth
 
 Order, but this Court dismissed the appeal as an improper interlocutory appeal.
 
 Beroth III
 
 , --- N.C. App. at ----,
 
 808 S.E.2d at 502
 
 .
 

 DOT filed the complaint in the present action on 13 December 2016, seeking to take the Property pursuant to its powers of direct
 
 *385
 
 condemnation under Article 9, Chapter 136. Defendant filed a motion to dismiss on 11 January 2017 arguing,
 
 inter alia
 
 : "As there is a prior pending action [Defendant's Action] and judgment on the exact property and area and interest/interest valuation, and involving the same parties, the Prior Pending action and judgment for taking precludes [DOT] filing and prosecuting this action." The trial court granted Defendant's motion to dismiss by order entered 23 February 2017. DOT filed a motion for relief from judgment pursuant to Rule 60(b)(6) on 24 March 2017. The trial court entered an order on 25 April 2017 denying DOT's motion to reconsider its 23 February 2017 ruling dismissing the action. DOT appeals.
 

 II.
 
 Analysis
 

 A.
 
 Condemnation
 

 In order to address the relevant issues brought forth in the present case, we review the provisions of Article 9, Chapter 136, which concerns condemnation by DOT, both direct and inverse.
 
 See
 

 N.C. Gen. Stat. §§ 136-103
 
 (a) and -111 (2017). It is the duty of DOT to institute an action when it determines condemnation of real property for DOT purposes is necessary. N.C.G.S. § 136-103(a) ("In case condemnation shall become necessary [DOT] shall institute a civil action by filing in the superior court of any county in which the land is located a complaint and a declaration of taking declaring that such land, easement, or interest therein is thereby taken for the use of [DOT]."). When DOT properly initiates an action pursuant to N.C.G.S. § 136-103, the relevant property is deemed condemned, title to the property immediately vests in DOT, and DOT obtains all associated rights.
 
 N.C. Gen. Stat. § 136-104
 
 (2017).
 

 However, if DOT fails to initiate condemnation proceedings pursuant to N.C.G.S. § 136-103, a person with an interest in a property may initiate inverse condemnation proceedings to determine whether a taking by DOT has occurred:
 

 Any person whose land or compensable interest therein has been taken by an intentional or unintentional act or omission of [DOT] and no complaint and declaration of taking has been filed by [DOT] may, within 24 months of the date of the taking of the affected property or interest therein or the completion of the project involving the taking, whichever shall occur later, file a complaint in the superior court ...; said complaint shall ... allege with particularity the facts which constitute said taking together with the dates that they allegedly occurred; said complaint shall describe the property allegedly owned by
 
 *386
 
 said parties
 
 *637
 
 and shall describe the area and interests allegedly taken. ....
 
 The procedure hereinbefore set out shall be followed for the purpose of determining all matters raised by the pleadings and the determination of just compensation
 
 .
 

 N.C.G.S. § 136-111 (emphasis added). Therefore, the procedures set forth in Article 9 pertain to takings established pursuant to both N.C.G.S. § 136-103 and N.C.G.S. § 136-111.
 
 See also
 

 Berta v. Highway Comm.
 
 ,
 
 36 N.C. App. 749
 
 , 754,
 
 245 S.E.2d 409
 
 , 412 (1978). Although N.C.G.S. § 136-111 does not expressly state when an inverse condemnation taking established pursuant to that section is deemed to have occurred, this Court has held that, once a taking has been established pursuant to N.C.G.S. § 136-111, the taking shall be deemed to have occurred at the time the injury to the property resulting in the taking occurred.
 
 Berta
 
 ,
 
 36 N.C. App. at 753-54
 
 ,
 
 245 S.E.2d at 411-12
 
 . Our Supreme Court held in
 
 Kirby II
 
 that, for the properties affected, a taking occurs at the time DOT records corridor maps pursuant to the Map Act.
 
 Kirby II
 
 ,
 
 368 N.C. at 856
 
 ,
 
 786 S.E.2d at 926
 
 ("By recording the corridor maps at issue here, which restricted plaintiffs' rights to improve, develop, and subdivide their property for an indefinite period of time, NCDOT effectuated a taking of fundamental property rights.").
 

 "To prevail on [an] inverse condemnation claim, [the] plaintiffs must show that their 'land or compensable interest therein has been taken.' "
 
 Beroth II
 
 ,
 
 367 N.C. at 340
 
 ,
 
 757 S.E.2d at 472
 
 (citation omitted). In the present case, the
 
 Beroth
 
 Order established that a compensable interest in the Property was taken by DOT through inverse condemnation.
 
 Beroth
 
 Order,
 
 2016 WL 9234026
 
 , *2. DOT does not contest that a taking of a compensable interest in the Property occurred pursuant to the 26 November 2008 recordation of the Corridor Map. In an action for either direct condemnation or inverse condemnation, the trial court first makes a determination of all issues other than damages:
 

 [T]he [trial] judge ... shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken.
 

 N.C. Gen. Stat. § 136-108
 
 (2017). As this Court has stated:
 

 Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even
 
 *387
 
 though it may have no desire to do so. It allows a property owner to obtain compensation for a taking in fact, even though no formal exercise of the taking power has occurred. [The inverse condemnation statute] provides the private property owner with a means to compel government action.
 

 Smith v. City of Charlotte
 
 ,
 
 79 N.C. App. 517
 
 , 521,
 
 339 S.E.2d 844
 
 , 847 (1986) (citations omitted). In order to fulfill the intent of Article 9, the General Assembly has granted the trial court broad discretion to conduct its proceedings in the manner it believes will best achieve the purposes of the Article:
 

 In all cases of procedure under this Article where the mode or manner of conducting the action is not expressly provided for in this Article or by the statute governing civil procedure or where said civil procedure statutes are inapplicable the judge before whom such proceeding may be pending
 
 shall have the power to make all the necessary orders and rules of procedure necessary to carry into effect the object and intent of this Chapter
 
 and the practice in such cases shall conform as near as may be to the practice in other civil actions in said courts.
 

 N.C. Gen. Stat. § 136-114
 
 (2017) (emphasis added). We now apply this law to the facts before us.
 

 B.
 
 Defendant's Prior Action
 

 Defendant's Action, filed 9 May 2016, requested,
 
 inter alia
 
 , that the trial court rule the Property had been taken by DOT upon recordation of the Corridor Map for the Eastern Loop portion of the Project on 26 November 2008. Defendant requested that DOT "be compelled to purchase [the] Property for the inverse condemnation;" and further requested damages for the alleged taking, including compensatory damages, various
 
 *638
 
 fees and costs incurred, interest accrued since the alleged 26 November 2008 taking, and reimbursement for "all taxes and expenses paid on the Property from the date of taking[.]"
 

 The decisions in
 
 Kirby I
 
 and
 
 Kirby II
 
 , reversing the ruling of the trial court, held that recordation of the relevant corridor maps effectuated takings by DOT of fundamental property rights of the
 
 Kirby
 
 plaintiffs and remanded the matter for further proceedings. Accordingly,
 
 Kirby II
 
 held that the trial court had improperly dismissed the
 
 Kirby
 
 plaintiffs'
 

 *388
 
 inverse condemnation claims.
 
 Kirby II
 
 ,
 
 368 N.C. at 856
 
 ,
 
 786 S.E.2d at 926
 
 . The
 
 Beroth
 
 Order addressed certain outstanding issues related to Defendant, defendants in the companion cases, the
 
 Kirby
 
 plaintiffs, the
 
 Beroth
 
 plaintiffs, and multiple additional plaintiffs. Relying on the
 
 Kirby
 
 opinions, the trial court,
 
 inter alia
 
 , granted Defendant's motion for partial judgment on the pleadings as to DOT's "liability for a taking in inverse condemnation under N.C.G.S. § 136-111 ..., in accordance with Rule 12(c) of the Rules of Civil Procedure."
 
 Beroth
 
 Order,
 
 2016 WL 9234026
 
 at *4. The trial court stated:
 

 Using the powers afforded this [c]ourt under N.C.G.S. § 136-114 to fashion such rules and procedures necessary to carry out the object and intent of Article 9 of Chapter 136 of the North Carolina General Statutes, the [c]ourt will establish a procedure and timetable for [ ]DOT to file plats, make deposits with the required statutory interest, and, if any plaintiff rejects [ ]DOT offer, scheduling Section 108 hearings if either party requests it, in order to implement and comply with the requirements of N.C.G.S. § 136-111.
 

 Id.
 
 at *1. Although the trial court stated it was "not prepared at this stage of the proceedings to rule that the takings are in the nature of fee simple valuation; ... so the [trial] court will deny [Defendant's] motion[ ] at this time in this regard[,]" it further stated that the issue of whether DOT's taking of Defendant's property would be declared a fee simple taking could, and likely would, be addressed "at the Section 136-108 hearing phase."
 
 Id
 
 . at *2.
 

 Pursuant to the authority granted by N.C.G.S. § 136-114, the
 
 Beroth
 
 Order set a specific procedure to follow in preparation for the N.C.G.S. § 136-108 hearing phase, including ordering "that it is now incumbent upon [ ]DOT to comply with N.C.G.S. § 136-111 by filing its plats and making good faith deposits with interest at the statutory rate from the date of taking with the Forsyth County Clerk of Court[.]"
 
 Id.
 
 The trial court set further procedures and timetables for DOT and the plaintiffs to follow.
 
 Id.
 
 at *2-4. The trial court further ruled: "Upon [DOT] filing the plat, making the deposit, delivery of the appraisal, and notice from the property owner that [ ]DOT valuation is rejected, either party may ask for Section 108 hearings if there is a controversy regarding the necessary and proper parties, title to the land, interest taken, or area taken."
 
 Id
 
 . at *4.
 

 As noted above, DOT's appeal of the
 
 Beroth
 
 Order was held to be an improper interlocutory appeal and was dismissed.
 

 *389
 

 Beroth III
 
 , --- N.C. App. at ----,
 
 808 S.E.2d at 502
 
 . Therefore, the
 
 Beroth
 
 Order remains in force and currently controls on the issues decided therein.
 
 [4]
 
 As this Court stated in
 
 Beroth III
 
 :
 

 At this juncture, it is [ ]DOT that
 
 must follow
 
 the [
 
 Beroth
 
 Order ] appealed herein and file plats or maps, without further delay, identifying interests and areas taken
 
 to comply with G.S. § 136-111 and with the clear mandates of this Court
 
 in
 
 Kirby I
 
 ,
 
 and our Supreme Court
 
 in
 
 Kirby II
 
 .
 

 Following this, as per the appealed order, either party may schedule a hearing pursuant to Section 108 from which the trial court would determine any and all issues raised by the pleadings other than the issue of damages. The measure of damages can then be determined by a jury pursuant to
 
 N.C. Gen. Stat. § 136-112
 
 , to which the trial court shall add interest accrued from the date of the taking to the date of judgment pursuant to
 
 N.C. Gen. Stat. § 136-113
 
 , as well as reimbursement of costs,
 
 *639
 
 disbursements, and expenses pursuant to
 
 N.C. Gen. Stat. § 136-119
 
 .
 

 Id
 
 . at ----,
 
 808 S.E.2d at 502
 
 (emphasis added).
 

 C.
 
 The Present Case
 

 In the present case, DOT filed a declaration of taking and a complaint on 13 December 2016 indicating it was initiating a direct condemnation action against Defendant pursuant to N.C.G.S. § 136-103, and depositing with the trial court the amount of money DOT estimated Defendant was entitled to for the taking of the Property. According to Article 9,
 
 proper compliance
 
 with the provisions of N.C.G.S. § 136-103 causes title to the subject property to immediately vest in DOT. N.C.G.S. § 136-104. However, DOT initiated the present direct condemnation action on 13 December 2016, approximately two and a half months
 
 after
 
 entry of the 29 September 2016
 
 Beroth
 
 Order. In his motion to dismiss, Defendant argued that, because he filed an action for inverse condemnation pursuant to N.C.G.S. § 136-111 on 9 May 2016, and because Defendant's inverse condemnation action concerns substantially the same parties and subject matter as DOT's 13 December 2016 direct condemnation action, DOT's action must be abated.
 
 See
 

 Jessee v. Jessee
 
 ,
 
 212 N.C. App. 426
 
 , 438,
 
 713 S.E.2d 28
 
 , 37 (2011) (citations omitted) (" 'Under the law of
 
 *390
 
 this state, where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action.' "). We note that the trial court's 23 February 2017 order granting Defendant's motion to dismiss DOT's direct condemnation action against Defendant was entered "without prejudice to [ ]DOT's right to file a permissive counterclaim in [Defendant's inverse condemnation action.]"
 

 1. Prior Pending Action Doctrine
 

 "The 'prior pending action' doctrine involves 'essentially the same questions as the outmoded plea of abatement[.]' "
 
 Id
 
 . at 438,
 
 713 S.E.2d at 37
 
 (citation omitted). The doctrine is
 

 intended to prevent the maintenance of a "subsequent action [that] is wholly unnecessary" and, for that reason, furthers "the interest of judicial economy." "The ordinary test for determining whether or not the parties and causes are the same for the purpose of abatement by reason of the pendency of the prior action is this: Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?"
 

 Id.
 

 DOT argues there "was no identity of subject matter, issues involved or relief demanded" because Defendant's Action involved "the alleged taking of non-possessory restrictions imposed on the subject property on 26 November 2008 as the result of [DOT's] recording a corridor protection map[,]" whereas DOT's present action involves "the taking of possessory interests (right of way in fee simple, control of access and temporary construction easements) on 13 December 2016"-the date DOT initiated this action pursuant to N.C.G.S. § 136-103.
 

 Defendant's complaint in his 9 May 2016 action alleged that DOT had taken compensable interests in the Property through inverse condemnation; DOT's action sought to take the Property by direct condemnation. There is no dispute concerning the real property involved, only about the nature of the property rights acquired by DOT's 26 November 2008 taking.
 
 [5]
 
 Defendant's complaint requested "damages ... arising out of [DOT's] taking by inverse condemnation of [Defendant's] property[.]" DOT's complaint contended that DOT and Defendant could not agree on the value of the Property. Defendant's complaint requested that DOT "be
 
 *391
 
 compelled to purchase [the] Property for the inverse condemnation" for "just compensation" as determined pursuant to Article 9. DOT's action sought to acquire the Property for $188,500.00, or for whatever amount was determined to be just in the condemnation proceeding.
 

 DOT contends that these facts in this case do not demonstrate a substantial identity of
 
 *640
 
 subject matter, issues involved, and relief demanded. DOT bases its argument on the fact that through its direct condemnation action it took the Property in fee simple; that this taking did not occur until 13 December 2016; Defendant's Action involves DOT's taking of Defendant's property rights that result in a "negative easement" affecting the Property; and that the taking involved in Defendant's Action occurred when the Corridor Map was recorded on 26 November 2008. DOT seems to want this Court to ignore Defendant's complaint, and the full extent of the
 
 Beroth
 
 Order, and restrict our analysis to DOT's limited reading of the holdings in
 
 Kirby I
 
 and
 
 Kirby II
 
 .
 

 Defendant seeks to compel DOT to purchase the Property in fee simple through his inverse condemnation action. Although in the
 
 Beroth
 
 Order the trial court did not grant Defendant's motion for judgment on the pleadings in this respect, that issue is still before the trial court in Defendant's prior action:
 

 To the extent [Defendant] requested the [trial c]ourt to find a taking at fee simple valuation, the [trial c]ourt is not prepared at this stage of the proceedings to rule that the takings are in the nature of fee simple valuation; therefore, ...the [trial] court will deny [Defendant's] motion[ ] at this time in this regard. The issue may, and will likely be, revisited at the Section 136-108 hearing phase.
 

 Beroth Order
 
 ,
 
 2016 WL 9234026
 
 at *2. The trial court further ruled:
 

 [ ]DOT may issue instructions to its appraisers to make appraisals based on something other than a fee simple taking, such as the concept of a negative easement. While this [c]ourt has
 
 not yet
 
 judicially imposed a fee simple valuation upon [ ]DOT at this juncture, [ ]DOT may ultimately conclude, based on the actual location of the [P]roperty and the fact that [the P]roperty will be graded and covered with asphalt, that it only makes sense to treat the appraisal as a fee simple valuation[.]
 

 Id.
 
 at *3 (emphasis added). In preparation for the N.C.G.S. § 136-108 hearing, the
 
 Beroth
 
 Order ruled "that it is now incumbent upon [ ]DOT to
 
 *392
 
 comply with N.C.G.S. § 136-111 by filing its plats and making good faith deposits with interest at the statutory rate from the date of taking with the Forsyth County Clerk of Court[.]"
 
 Id.
 
 at *2.
 

 Pursuant to the broad discretion granted it by the General Assembly through N.C.G.S. § 136-114, the trial court has provided DOT with the opportunity to proceed with a fee simple direct condemnation action alongside Defendant's inverse condemnation action. As evidenced by the relief sought in Defendant's complaint, proceeding to fee simple determination of the condemned land is apparently Defendant's desire as well.
 
 See
 
 N.C.G.S. § 136-108 ("After the filing of the plat, the judge ... shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."). DOT argues that, pursuant to N.C.G.S. § 136-103, it has the right to file a complaint and declaration of taking for a property at any time, no matter that there exists at that time a prior, ongoing condemnation action concerning the same property. DOT contends that, because it "determined that it [was] in the public interest to condemn whatever interests [Defendant] still has in the subject property[,]" it was authorized to do so. However, the interests, if any, that Defendant maintains in the Property is one of the issues to be determined in Defendant's Action.
 

 If the trial court determines that DOT has acquired, or must acquire, a fee simple interest in the Property pursuant to Defendant's inverse condemnation action, Defendant will retain no remaining property interest in the Property for DOT to directly condemn pursuant to N.C.G.S. § 136-103. DOT fails to convey to this Court any utility in initiating a condemnation action concerning a property already subject to a condemnation action, nor how DOT's action could result in anything other than confusion and delay-as is currently the situation for the Property, as well as the properties involved in the companion appeals. We hold that the prior pending action doctrine applies in this case, and on these facts Defendant's Action served to prevent
 
 *641
 
 DOT from proceeding with a direct condemnation action pursuant to N.C.G.S. § 136-103.
 

 2. Alternate Procedures
 

 DOT contends that the General Assembly "did not empower [DOT] to institute a condemnation proceeding by filing a counterclaim in a pending action. The General Assembly did not authorize the courts, in
 
 N.C. Gen. Stat. § 136-114
 
 or otherwise, to re-write the unambiguous language of
 
 N.C. Gen. Stat. § 136-103
 
 ." DOT seeks an application of
 
 *393
 
 N.C.G.S. § 136-103 in isolation, and not as one of multiple sections of Article 9. DOT took compensable property rights from Defendant in 2008 without filing a complaint or declaration of taking as required by N.C.G.S. § 136-103. For this reason Defendant initiated an action pursuant to N.C.G.S. § 136-111 : "Remedy where no declaration of taking filed[,]" that states in relevant part: "Any person whose land or compensable interest therein has been taken by an intentional or unintentional act or omission of [DOT] and no complaint and declaration of taking has been filed by [DOT] may ... file a complaint in the superior court" alleging a taking by inverse condemnation. N.C.G.S. § 136-111. This was the appropriate and sole remedy established in Article 9 available to Defendant in response to DOT's taking of Defendant's property rights absent initiating a direct condemnation action pursuant to N.C.G.S. § 136-103. There is nothing in Article 9 suggesting that, once a plaintiff-property owner acts pursuant to N.C.G.S. § 136-111, precisely because of DOT's failure to act pursuant to N.C.G.S. § 136-103, that DOT can derail the plaintiff's action by initiating an action pursuant to N.C.G.S. § 136-103 while the plaintiff-property owner's N.C.G.S. § 136-111 action is ongoing.
 

 DOT is also incorrect in arguing that bringing a counterclaim in an N.C.G.S. § 136-103 action is not permitted by Article 9. As noted above, N.C.G.S. § 136-114 states:
 

 In all cases of procedure under this Article where the mode or manner of conducting the action is not expressly provided for in this Article
 
 or by the statute governing civil procedure
 
 or where said civil procedure statutes are inapplicable the judge before whom such proceeding may be pending
 
 shall have the power to make all the necessary orders and rules of procedure necessary to carry into effect the object and intent of this Chapter and the practice in such cases shall conform as near as may be to the practice in other civil actions
 
 in said courts.
 

 N.C.G.S. § 136-114 (emphasis added). N.C. Gen. Stat. § 1A-1, Rule 13, which applies to the relevant actions in this appeal by the express terms of N.C.G.S. § 136-114, concerns counterclaims. It is unnecessary for this Court to determine whether DOT's counterclaim in Defendant's Action would be best described as "permissive," and likely unhelpful in light of the particular and distinct nature of actions pursuant to Article 9. To the extent that Rule 13 required "amendment" by the trial court to best apply to the facts before it in the present case, N.C.G.S. § 136-114 provided the trial court with that authority. We find the following citation from this Court generally instructive:
 

 *394
 
 [Our Supreme Court] held that if an action may be denominated a compulsory counterclaim in a prior action, it must be either (1) dismissed with leave to file it in the former case or (2) stayed until the conclusion of the former case. Because the purpose of Rule 13(a) is to combine related claims in one action, "thereby avoiding a wasteful multiplicity of litigation," we believe the option to stay the second action should be reserved for unusual circumstances, not present in the case at bar.
 

 Brooks v. Rogers
 
 ,
 
 82 N.C. App. 502
 
 , 507,
 
 346 S.E.2d 677
 
 , 681 (1986) (citations omitted). The purpose of Rule 13(a) is just as relevant in the present case, and we hold that the trial court had the authority to enter its 23 February 2017 order dismissing DOT's direct condemnation action "without prejudice to [DOT's] right to file a ... counterclaim in the Pending Action[.]" Because of the unique nature of condemnation proceedings, DOT would retain its right to bring an action pursuant to N.C.G.S. § 136-103 to condemn the Property, or any remaining rights in the Property retained by Defendant, if resolution of Defendant's Action leaves DOT lacking in
 
 *642
 
 some right in the Property necessary for completion of the Project.
 

 However, DOT instead continues to seek to proceed by its own direct condemnation actions-actions it only decided to file after years of litigation involving hundreds of plaintiffs who have been seeking the same resolution through inverse condemnation actions, some of which were filed over seven years ago. We do not believe the General Assembly contemplated Article 9 to permit direct condemnation actions and inverse condemnation actions concerning the same property to be litigated simultaneously, and we find nothing in Article 9 or elsewhere granting DOT that right. We therefore affirm the 23 February 2017 order dismissing DOT's 13 December 2016 action.
 

 DOT also argues that "the trial court abused its discretion in denying [DOT's] motion for relief from [the 23 February 2017] judgment" pursuant to Rule 60(b)(6). DOT's argument is wholly predicated on its argument that the trial court erred in dismissing its 13 December 2016 action. In light of our decision affirming the 23 February 2017 order, we also affirm the trial court's 25 April 2017 order denying DOT's 24 March 2017 motion to reconsider the 23 February 2017 order.
 

 AFFIRMED.
 

 Judges ELMORE and MURPHY concur.
 

 [1]
 

 Effective 11 July 2016, all transportation corridor maps were rescinded. Act of July 1, 2016, ch. 90, sec. 17(a),
 
 2016 N.C. Sess. Laws 2016
 
 ("All transportation corridor official maps adopted pursuant to Article 2E of Chapter 136 of the General Statutes, and any amendments thereto, are hereby rescinded, and all restrictions under Article 2E of Chapter 136 of the General Statutes shall no longer apply to properties or portions of properties within the affected transportation corridors.").
 

 [2]
 

 Two companion cases, with opinions filed concurrently with this opinion, also involve property recorded in the Corridor Map of the Project on 26 November 2008. Those cases are COA17-597,
 
 Dep't of Transp. v. Chapman
 
 and COA17-598,
 
 Dep't of Transp. v. MDC Invs., LLC
 
 .
 

 [3]
 

 Along with Defendant, other plaintiffs added in the consolidation included the defendants in the companion cases,
 
 Chapman
 
 and
 
 MDC
 
 ; the
 
 Beroth
 
 plaintiffs, and the
 
 Kirby
 
 plaintiffs.
 

 [4]
 

 The
 
 Beroth
 
 Order is not before us, so we make no determinations regarding the correctness of that order in this appeal.
 

 [5]
 

 Though DOT, in its brief, speaks of "the alleged taking" in Defendant's Action, that there was a taking on 26 November 2008 has been established by the
 
 Beroth
 
 Order.