Britcher v. Assurance Grp., LLC, 2026 NCBC 29.

STATE OF NORTH CAROLINA

RANDOLPH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV001638-750

JOHN BRITCHER; INDIGO
DILLARD; STEPHEN EBEL; RYAN
FREEMAN; MIKE FURIMSKY;
CANDICE FURIMSKY; CRYSTAL
HUBBS; ADAM HUGGINS;
MADISON KINLAW; JOCELYN
KINLAW; JACOB LAMB; ROBERT
MAZZOLA; TERRY McKAY;
LORAINNA PASSE; NICHOLAS
ROSS; BRANDON SALASSI;
SEAN SPANOS; ALYSIA
SULLIVAN; DYLAN SWEET;
KELLY JO THOMPSON;
and MATTHEW TOOKER,

Plaintiffs,

v.

THE ASSURANCE GROUP, LLC,

Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendant The Assurance Group, LLC's

("TAG") partial Motion to Dismiss ("Motion to Dismiss" or the "Motion," ECF No. 35).

**THE COURT**, having considered the Motion, the briefs of the parties, and all

appropriate matters of record, **CONCLUDES** that the Motion should be **GRANTED**

for the reasons set forth below.

*Revolution Law Group, by C. Scott Meyers and Brooks Duane Godbold, for Plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Kimberly M. Marston, Robert J. King III, William A. Robertson, and Susan S. Stutts, for Defendant.*

Davis, Judge.

## INTRODUCTION

1. In addressing the present Motion, the Court must determine whether claims asserted by one of the plaintiffs in this case must instead be brought as compulsory counterclaims in a related action pursuant to Rule 13(a) of the North Carolina Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint (and in documents attached to, referred to, or incorporated by reference in the complaint) that are relevant to the Court's determination of the motion. *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).[1]

3. TAG is an insurance marketing organization that serves as an intermediary between insurance carriers and agents. (Sec. Am. Compl. ("SAC"), ECF No. 26, ¶¶ 13–14.) As an intermediary, TAG retains a portion of sales commissions paid out to insurance agents in return for its services. (SAC ¶ 14.)

4. Plaintiffs in this case consist of a group of insurance agents that are all former employees or independent contractors of TAG. (SAC ¶¶ 7, 11.)

5. As an inducement for new employees, TAG offered to provide them with "no-cost sales leads." (SAC ¶ 20.) Plaintiffs allege that "[t]he primary benefit and

---

[1] A more complete factual background of this case can be found in the Court's Order and Opinion on Defendant's Motion to Dismiss, *Britcher v. Assurance Grp., LLC*, 2025 NCBC LEXIS 150, at *2–6 (N.C. Super. Ct. Nov. 4, 2025).

main reason for an agent, including all Plaintiffs, to join TAG [wa]s access to the promised free leads." (SAC ¶ 23.)

6.     The present Motion concerns one Plaintiff in particular, Lorainna Passe, who worked as both an independent contractor and an employee of TAG between September 2024 and February 2025. (SAC ¶ 7.)

7.     As part of her employment with TAG, Passe entered into an Independent Agent Agreement ("IAA"), which included certain restrictive covenants. (SAC ¶¶ 36, 42.)

8.     TAG's initial IAA (prior to July 2023) provided that "the contract would automatically terminate if the agent did not sell at least one insurance product in any 60-day period" and that agents would "have access to and [could] use certain of [TAG's] . . . leads on prospective purchasers of Insurance Products and Services without charge[.]" (SAC ¶¶ 37–38.)

9.     In or around July 2023, TAG made the following two "unilateral" and "unannounced" changes to the IAA: (1) reducing the automatic termination provision from 60 days to 30 days; and (2) removing the "no-cost leads obligation." (SAC ¶¶ 46–50, 55.)

10.     Despite these changes, TAG's restrictive covenants remained in effect. (SAC ¶ 52.)

11.     Plaintiffs were first put on notice of these changes to the IAA in the summer of 2023 when they were prompted to sign a revised version of the document in order to access TAG's online portal. (SAC ¶¶ 55–58.)

12.     All Plaintiffs signed the revised IAA in order to (1) maintain access to TAG's online portal so as to continue carrying out their job responsibilities; (2) retain employment that would confer upon them continued eligibility for receipt of sales commissions; and (3) avoid the significant waiting periods that insurance carriers would have required if Plaintiffs were to leave TAG for another insurance intermediary.  (SAC ¶¶ 61–66.)

13.     All of the Plaintiffs ultimately left their employment with TAG either voluntarily or involuntarily.  (SAC ¶¶ 68–70.)

14.     Plaintiffs initiated this action by filing a Complaint against TAG in Randolph County Superior Court on 22 May 2025.  (ECF No. 3.)  Plaintiffs filed the SAC (which is currently their operative pleading) on 25 November 2025.  The SAC contains claims for: a declaratory judgment that the TAG restrictive covenants are unenforceable, violation of the North Carolina Sales Commission Act (brought by the former independent agents of TAG), violation of the North Carolina Wage and Hour Act (brought by the former employees of TAG), and abuse of process.

15.     On 20 January 2026, TAG filed its Answer to Second Amended Complaint and Counterclaims. ("Counterclaims," ECF No. 37.)  In its Counterclaims, TAG has asserted claims against Plaintiffs for breach of contract, violation of the North Carolina Trade Secrets Protection Act, tortious interference with contract, unfair or deceptive trade practices, civil conspiracy, and money owed.

16.     On that same date, TAG filed the present Motion to Dismiss in which it seeks the dismissal of all claims asserted by Passe.

17. The Motion has been fully briefed and is now ripe for resolution.[2]

**LEGAL STANDARD**

18. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pled factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

19. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers

---

[2] Pursuant to North Carolina Business Court Rule ("BCR") 7.4, the Court elects to rule on the Motion without a hearing. *See* BCR 7.4 (stating that "t[he] Court may rule on a motion without a hearing").

even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

20. Our Supreme Court has stated that "dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

21. In its Motion, TAG seeks to dismiss Passe's claims in this action based on its contention that her claims are actually compulsory counterclaims under Rule 13(a) of the North Carolina Rules of Civil Procedure that must be brought in a related case before the Court in which Passe is a named defendant—*The Assurance Group, LLC v. Shackelford*, No. 25CV000662-750 (Randolph Cnty. Super. Ct.) (the "*Shackelford* Action").

22. TAG initiated the *Shackelford* Action against several of its former independent contractors and employees (including Passe) in February 2025. (*Shackelford* Action, Compl., ECF No. 3.) In that case, TAG has alleged that the defendants conspired to steal away TAG's clients, agents, and employees for a competing enterprise that two of the defendants created and to misappropriate TAG's confidential information. (*Shackelford* Action, Sec. Am. Compl., ECF No. 126, ¶¶ 39–68.)

23.     Rule 13(a) of the North Carolina Rules of Civil Procedure provides as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

N.C. R. Civ. P. 13(a).

24.     Rule 13(a) seeks "to enable one court to resolve all related claims in one action, thereby avoiding a wasteful multiplicity of litigation." *Jonesboro United Methodist Church v. Mullins-Sherman Architects, L.L.P.*, 359 N.C. 593, 597 (2005) (cleaned up).

25.     In determining "whether certain claims arose out of the same transaction or occurrence as a prior action," North Carolina courts consider the following factors:

> (1) whether the issues of fact and law are largely the same; (2) whether substantially the same evidence is involved in each action; and (3) whether there is a logical relationship between the two actions. There must be not only a common factual background but also a logical relationship in the nature of the actions and the remedies sought.

*Hailey v. Allgood Constr. Co.*, 95 N.C. App. 630, 632 (1989).

26.     Once Rule 13(a) is deemed applicable to a "second independent action," the second action "must on motion be either (1) dismissed with leave to file [the compulsory counterclaim] in the former case or (2) stayed until the former case has been finally determined." *Gardner v. Gardner*, 294 N.C. 172, 177 (1978); *see also Atkins v. Nash*, 61 N.C. App. 488, 494 (1988) ("While [the *Gardner*] decision related

to claims in marital disputes, we perceive no valid reason why the procedure there prescribed should not be of general applicability where the subject matter of the subsequent action was properly the subject of a compulsory counterclaim in the prior action.").

27.     North Carolina courts have held that "the option to stay the second action should be reserved for unusual circumstances." *See Brooks v. Rogers*, 82 N.C. App. 502, 507 (1986) (cleaned up); *DOT v. Stimpson*, 258 N.C. App. 382, 393–94 (2018) (citing *Brooks* as "generally instructive" on Rule 13(a) analysis); *Richardson v. Mancil*, 2010 N.C. App. LEXIS 2323, at *20–21 (2010) (unpublished) (following the holding in *Brooks* by reserving the option to stay for "unusual circumstances").

28.     In the present case, Passe has asserted against TAG claims for: a declaratory judgment that portions of TAG's IAA are unenforceable, violation of the North Carolina Sales Commission Act, violation of the North Carolina Wage and Hour Act, and abuse of process. In the *Shackelford* Action, TAG has pled claims against Passe for: breach of contract with respect to her IAA, violation of the North Carolina Trade Secrets Protection Act, unfair or deceptive trade practices, and civil conspiracy. (*Shackelford* Action, Sec. Am. Compl. ¶¶ 69–82, 87–93.)

29.     Based on a comparison of the pleadings in the present case and the pleadings in the *Shackelford* Action, it is clear that the claims Passe has asserted against TAG in the present case arise out of the same transactions or occurrences as the claims TAG has brought against her in the *Shackelford* Action.

30.     First, the issues of fact and law are largely the same in the present case

and in the *Shackelford* Action. In the *Shackelford* Action, TAG alleges that Passe breached the IAA that she signed in connection with her employment on or about 9 October 2024. (*Shackelford* Action, Sec. Am. Compl. ¶¶ 17, 69–78.)

31. In the present case, Passe alleges that the same IAA is unenforceable on multiple counts. She seeks declaratory judgments that the IAA is unfair and unconscionable, lacks consideration, and is void as against public policy and that TAG's restrictive covenants are not narrowly tailored to protect its legitimate business interests.

32. Second, the Court finds that substantially the same evidence is involved in the present case and in the *Shackelford* Action as to Passe.

33. Third, there is a logical relationship in the nature of both actions and the remedies sought. Both cases involve—to a significant extent—the provisions of the IAA signed by Passe (and other employees/independent contractors of TAG), whether those provisions are legally enforceable, and whether they were breached.

34. Finally, Passe has failed to show that the adjudication of her claims requires the presence of third parties as to whom the Court in the *Shackelford* Action cannot acquire jurisdiction.

35. Passe does not seriously dispute any of the above. Instead, she makes a "judicial efficiency" argument in which she contends that Rule 13(a) need not be applied strictly here in light of the fact that the undersigned is the assigned judge in both the present action and the *Shackelford* Action. However, Passe has failed to cite any legal authority showing that the application of Rule 13(a) is discretionary rather

than mandatory or that the Rule should not be given effect under these circumstances.

36. As a result, the Court concludes that Passe's claims asserted in the present action must instead be brought as compulsory counterclaims in the *Shackelford* Action.

## CONCLUSION

**ACCORDINGLY**, the Court hereby **ORDERS** as follows:

a. TAG's Motion to Dismiss as to the claims brought by Lorainna Passe in this action is hereby **GRANTED**.

b. Passe's claims in the present case are **DISMISSED without prejudice** to her ability to assert them as counterclaims in the *Shackelford* Action.

**SO ORDERED**, this the 31st day of March 2026.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases